PeaRSON, C. J.
 

 The bill is filed on the assumption that one, who purchases, at a fair price, a slave or other articles of a debtor, whose property is subject to the lien of an execution, but who has other slaves and property, besides the one sold, sufficient to satisfy the execution, is entitled to the protection of a court of equity, so that provided he gives notice to the sheriff of the fact of his being a purchaser of one of the slaves, and forbids the sh'eriff from selling that particular slave, and requires him to make the amount of the execution by selling some one of the other slaves, and the sheriff, nevertheless, proceeds to sell the particular slave, equity will, in favor of the purchaser at private sale, convert the purchaser, at the execution sale, into a trustee, if he is fixed with notice of the facts, and require him to convey the slave to the purchaser at private sale.
 

 The bill is of “ the first impression.” No case or dictum was cited to support it, and we are not able to see any principle upon which such an equity-can be based.
 

 It is true, the title of a debtor is not divested by the execution. If he sells, the purchaser acquires the property subject to the lien of the execution. If that be removed his title is good, but if it be not removed, his title will be divested by a sale, under it, and neither a court of law or equity can con- ' trol the power of the sheriff to make sale under the execution. Indeed, such an interference would give rise to much inconvenience, and greatly embarrass officers in the discharge
 
 *314
 
 of their duties. One man will say, “I have bought this negro'and forbid you from selling him, because the other property is sufficient, out of which you can make your money.” A second says, “I have bought
 
 this
 
 negro and you must not sell him.” So a third and a fourth ; and the sheriff may properly reply, “ the law has not made it my duty to take care of your rights, or to settle priorities between you, I have power to sell any one, or all of these negroes, in order to satisfy the execution ; it was your folly to buy property subject to my lien, without taking care to provide for the payment of the executions.” This position of the sheriff is unanswerable. The courts could not interfere with the action of the sheriff under this general power given by the execution, 'even in behalf of a surety, whose property was sold, or wasabout to be sold, to pay the debt in. the first instance, although it was known to the sheriff that the principal had property, out of which the debt could bo made ; see
 
 Eason
 
 v. Petway, 1 Dev. and Bat. 44. It was necessary to pass an express statute for the protection of the surety against the capricious and wanton exercise of this power by sheriffs and other officers; Rev. Code, ch. 31, sec. 124. It has not been deemed expedient by the Legislature to pass a statute for the protection of those who choose to buy property subject to the lien of an execution, and who fail to provide for its satisfaction.
 

 The only case cited on the argument, was
 
 Smith
 
 v.
 
 Mc
 
 Leod, 3 Ire. Eq. 390, and the counsel of the plaintiff contended there was a direct analogy between the relation of a surety and that of a purchaser, at a private sale, from a debtor, of property subject to the lion of an execution. We are notable to- perceive the supposed analogy. In the case cile’d, the Court agree there is no ground on which to control the action of the sheriff and relieve the surety, on the ground of a privi-tjr between him and the creditor, by reason of which, the creditor is bound to let the surety have the benefit of any security or lien, which he has acquired as against the principal, and decide that the active interference of the creditor in withdrawing from the hands of the sheriff an execution, under
 
 *315
 
 which a lien had attached to the property of the principal, was a discharge of the liability of the surety by matter
 
 in pais.
 
 But where is the analogy ? There is no privity of relation between the creditor, in the execution, and one who chooses to purchase a part of the property, which is subject to the lien of his execution. On the contrary, such a purchaser, at private sale, is a stranger, and, in fact, an inter-meddling stranger, who had -no business to buy any part of the debtor’s property, without taking care' to see that the pri- or lien was satisfied.
 

 If the-purchaser at pi i vate sale is not entitled to relief against the sheriff, or a purchaser under the execution sale, when the sale of the particular slave is made capriciously or wantonly by the sheriff, when the debtor has other property, liable to execution, the case is much stronger against him wheii the sheriff having received other executions, junior to the private sale, thinks it to be his duty to sell the particular negro, under the older execution, in order so to conduct the business as to satisfy as many of the executions, in his hands, as the property of the debtor can be. made to reach. Eor the sheriff acts as the agent of all the creditors, who have executions put into his hands, and his conduct then is not capricious or wanton, but in pursuance of a duty to the creditors imposed on him by having the executions in his hands.
 

 Nor is the case altered by the fact that the sheriff and the purchaser at execution sale, had an interest on account of their liability, as the surety, or otherwise, of the debtor in the execution. The sheriff had the power, under the older execution, to sell this particular negro. It was his duty so to make the sales, as to cause the property of the debtor to go as far as possible towards discharging all the executions in his hands, and neither his power or duty could be affected by’ the fact that he had a collateral interest which was subserved by the exercise of a power in the performance of his duty, and this can furnish no ground, on which a stranger, who chose to interfere-, can base any rights to have relief in etjuity.
 

 The view we have taken of the case makes it unnecessary
 
 *316
 
 to decide, whether the plaintiff was a
 
 "bona fide
 
 purchaser, or one who had taken a bill of sale, absolute on its face, which was intended as a mere security, that fact not being expressed on the face of the bill sale, in order to avoid the necessity of giving notoriety to it by registration, so as to enable the debt- or to conceal, for a time, the fact of his insolvency.
 

 Pee Cukiam, Bill dismissed.